IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF IDAHO

| | |
|---|---|
| AMERICAN GENERAL LIFE<br>INSURANCE COMPANY, a foreign<br>corporation doing business in the state of<br>Idaho,<br><br>            Plaintiff/Counter-Defendant,<br>    v.<br><br>CAROLYN M. BROUGHTON, TRUSTEE<br>of THE STEPHEN M. BROUGHTON AND<br>CAROLYN L. BROUGHTON FAMILY<br>TRUST, dated July 16, 1999,<br><br>            Defendant/Counter-Claimant.<br>_____ | )<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>) | Lead Case No. CV 06-0488-S-MHW<br><br><br>Member Case No. CV 07-65-S-MHW<br><br><br>**MEMORANDUM DECISION<br>AND ORDER** |

Currently pending before the Court are:  (1) Defendant/Counter-Claimant's Motion for

Judgment on the Pleadings filed on December 12, 2007, (Docket No. 20); and (2)

Plaintiff/Counter-Defendant's Cross-Motion for Judgment on the Pleadings filed January 14,

2008 (Docket No. 23).

The Court observes that the facts and legal arguments are adequately presented in the

briefs and record.  Accordingly, in the interest of avoiding further delay, and because the Court

conclusively finds that the decisional process would not be significantly aided by oral argument,

these motions shall be decided on the record before this Court without a hearing.  Dist. Idaho

Loc. Civ. R. 7.1(d)(2).

**I.**
**Background**

Plaintiff American General Life Insurance Company ("American General") brought this

action against Defendants, the Estate of Stephen Boughton, the Stephen and Carolyn Boughton

Trust, and Carolyn Boughton (collectively, "the Boughtons") on December 4, 2006.[1]  American General seeks a declaratory judgment pursuant to 28 U.S.C. § 2201.

In December 2004, American General issued a life insurance policy to Stephen Boughton in the amount of $500,000.00.  Complaint, Ex. A (Docket No. 1-2).  The beneficiary of this policy was the Stephen and Carolyn Boughton Trust.  Prior to the issuance of the policy, Stephen Boughton completed an application and made several representations to American General regarding his medical history.  Complaint, Ex. B (Docket No. 1-3).

The application included a section entitled "Authorization to Obtain and Disclose Information and Declaration" in which Mr. Boughton provided his consent for American General to obtain information regarding medical consultations and treatments, finances, among other items.  *Id*.  The authorization provided that Mr. Boughton understood that the information obtained could be used by American General to determine:  (1) eligibility for insurance; and (2) eligibility for benefits.  *Id*.  It also stated that any of the information obtained during evaluation of his application could be disclosed to certain individuals and entities.  *Id*.  The consent was to be valid for 24 months from the date of the application and could be revoked by Mr. Boughton at any time by sending a written request to American General.  *Id*.  This application was signed by Mr. Boughton on August 12, 2004.  *Id*.

A separate paragraph within the authorization provided that Mr. Boughton understood that the application would be the basis of any policy that was issued and that any misrepresentation contained in the application and relied on by American General may be used

---

[1] On January 17, 2007, the Boughtons filed an action against American General in the District Court of the Fifth Judicial District of the State of Idaho also seeking a declaratory judgment.  That case was removed to this Court on February 12, 2007.  *See* Boughton v. American General Life Insurance Co., Case No. CV 07-65-S-MHW. It was consolidated with this case on July 27, 2007. (Docket No. 18).

**Memorandum Decision and Order - Page 2**

to reduce or deny a claim or void the policy if:  "(1) it is within the contestable period; and (2) such misrepresentation materially affects the acceptance of risk." *Id*.

The policy was then issued on December 4, 2004.  Complaint, Ex. A.  It contained an "Incontestability" provision which stated:  "Except for the nonpayment of premiums, we will not contest this policy after it has been force during the lifetime of the insured for two years from the date of issue." *Id*.

Mr. Boughton died on July 30, 2006 of acute myelogenous leukemia.  On August 22, 2006, Mr. Boughton's wife, Carolyn Boughton, filed a claim for the proceeds of the life insurance policy.  American General routinely investigates claims that occur within two years of the date of issuance of a life insurance policy and it requested Mrs. Boughton to provide it with an authorization to collect additional information concerning Mr. Boughton's death.  The Boughtons contend that there is no provision in the insurance contract that allows American General to obtain the information it seeks.  American General alleges that Mrs. Boughton has a duty to cooperate in regards to the life insurance policy and has failed to do so as she has not provided any information nor submitted to an interview.  American General alleges that Mr. Boughton *may* have made misrepresentations or omissions that were fraudulent or material to the acceptance of the risk by American General and recovery under the policy may be precluded.

American General filed this action on December 4, 2006 seeking to obtain Mr. Boughton's medical records and, to the extent necessary, to interview Carolyn Boughton concerning her husband's death.  American General seeks a declaratory judgment pursuant to 28 U.S.C. § 2201 that it is entitled to investigate the death of Mr. Boughton prior to paying his beneficiaries any amount potentially due under the policy.

**Memorandum Decision and Order - Page 3**

The Boughtons' action seeks a declaratory judgment that American General cannot require them to give information, other than the death certification and proof of loss statement, nor submit to an investigation.  The Boughtons argue that any authorization to obtain such information commenced to run 24 months after Mr. Boughton made his *application* for the insurance policy, not 24 months after the policy was *issued*.

## II.
## Applicable Law

Idaho substantive law and federal procedural law apply in this diversity case.  *See Gasperini v. Ctr. for Humanities, Inc.*, 518 U.S. 415, 427 (1996).   The federal rules permit judgment on the pleadings if, "taking all allegations in the pleading as true, the moving party is entitled to judgment as a matter of law."  *McGann v. Ernst & Young*, 102 F.3d 390, 392 (9th Cir. 1996); Fed. R. Civ. P. 12(c).

Rule 12(c) provides "a means of disposing of cases when the material facts are not in dispute between the parties and a judgment on the merits can be achieved by focusing on the content of the pleadings, exhibits thereto, matters incorporated by reference in the pleadings, whatever is central or integral to a claim for relief or defense, and any facts of which the district court will take judicial notice."  Wright & Miller, FED. PRAC. & PROC. CIVIL 3D § 1367 ns. 4 & 5 (2004).

## III.
## Discussion

Where the policy language is clear and unambiguous, courts must determine coverage as a matter of law according to the plain meaning of the words used.  *Cascade Auto Glass, Inc. v. Idaho Farm Bureau Ins., Co.*, 115 P.3d 751, 753 (Idaho 2005) (citing *Clark v. Prudential Prop.*

*and Cas. Ins. Co.*, 66 P.3d 242, 245 (Idaho 2003)).

The authorization section in the application provides that Mr. Boughton consented to American General obtaining his medical and financial information to determine his eligibility for insurance and eligibility for benefits and that this information gathered *during the evaluation of his application* could be disclosed to certain individuals and entities.  Complaint, Ex. B (emphasis added).  The insurance policy contained the Incontestability provision, which provided that American General would not contest the policy "after it has been in force during the lifetime of the insured for two years from the *date of issue*."[2]  Complaint, Ex. A (emphasis added.)  This provision is consistent with Idaho Code § 41-1905:  "There shall be a provision that the policy...shall be incontestable, except for nonpayment of premiums, after it has been in force during the lifetime of the insured for a period of two (2) years from its date of issue."

The Boughtons make two primary arguments with regard to these provisions.  First, they maintain that Idaho law[3] allows parties to negotiate a contestability period for less than two years from date of issue and this is precisely what the application's authorization section does.  It is a negotiated period of contestability for 24 months from the *date of application*, instead of the date of issue.  Since the application was dated August 12, 2004, American General had until August 12, 2006 to request any of the information that Mr. Boughton consented to the release of in the

---

[2] Caselaw is consistent with American General's policy that the contestability period begins to run on from the date of issuance.  *See Lauer v. Am. Family Life Ins. Co.*, 769 N.E.2d 924, 927 (Ill. 2002) (finding that the incontestability provision began to run on the policy's issue date, rather than the date a conditional receipt was issued); *Fioretti v. Mass. Gen. Life Ins. Co.*, 53 F.3d 1228, 1233 n. 17 (11th Cir. 1995) (noting that the insurer's construction of "date of issue" to mean the first date of coverage instead of the stated date of issue to be strained since the policy defines the term "date of issue"); *Parkerson v. Fed. Home Life Ins. Co.*, 797 F. Supp. 1308 (E.D. Va. 1992) (finding that policy's two-year incontestability period began to run on date of issue stated on policy, rather than date insured signed application form and paid for his premium in advance).

[3] *See Duvall v. Nat'l Ins. Co. of Montana*, 154 P. 632 (Idaho 1916) (finding that the contestability statute does not prevent the parties from contracting that the period of contestability shall be less than two years).

**Memorandum Decision and Order - Page 5**

authorization.  When American General did not request that information within that time period,

it forfeited its right to obtain that information.  Secondly, they submit that these two provisions

can be reconciled with one another.  Their interpretation is that  prior to the expiration of the 24

month period from the date of application, the Boughtons must provide or release any medical or

financial history that American General requests.  Once that 24-month period expired (August

12, 2006), the policy can still be contested but only on the basis of information found on the face

of the application or independently discovered.  After August 12, 2006, Mr. Boughton, or his

family, cannot be required to release or provide medical or financial information.  Lastly, the

Boughtons maintain that any ambiguity the Court finds in the contract must be construed against

the insurer.  *Cascade Auto Glass, Inc. v. Idaho Farm Bureau Ins. Co.*, 115 P.3d 751, 754 (Idaho

2005).

American General contends that the authorization provided in the application has no

bearing on the contestability provision.  Instead, it deals exclusively with the release of

information for the purpose of providing American General with information needed to analyze

Mr. Boughton's application and determine if it should be approved.  The time period referenced

in the authorization is unrelated to the contestability period.  American General submits that

there is a difference between information sought as part of the application process and

information sought as part of a routine investigation during a contestability period.  Additionally,

American General asserts that the Boughtons have a duty to cooperate in its investigation.  This

duty stems from the implied covenant of good faith and fair dealing.

The Court agrees with American General that the authorization contained in the

application and the incontestability provision found in the policy are separate and distinct.  The

**Memorandum Decision and Order - Page 6**

authorization to release medical records, and the 24-month time period that goes along with it, make no reference to the contestability period provided in the policy.  Instead, the authorization provides that the consent could be revoked in writing at any time.  This is not be compatible with the incontestability provision.

Additionally, a latter portion of the authorization refers to the contestability period.  The 24 month period and the contestability period would not be referenced separately, in distinct paragraphs and described differently if they were one and the same.  Instead, there was an authorization for release of medical and other information as part of the application process and independent from that, there was a provision setting forth that the policy could only be contested during the first two years from the date of issue.

The purpose of incontestability clauses is to allow the insurer "a reasonable opportunity to investigate the statements made by the applicant in procuring the policy." *Mut. Life Ins. Co. of New York v. Ins. Com'r for State of Maryland*, 352 Md. 561, 570 (1999) (internal quotations omitted).  Investigations during the contestabilty period are routine.  *See Yang v. Peoples Benefit Ins. Co.*, 2007 WL 1555749, at *2 (E.D. Cal. May 25, 2007) ("Because [insured's] death occurred within the Policy's two-year contestable period, [the insurer] conducted a standard contestable investigation, which included obtaining and reviewing . . . medical records and obtaining an underwriting review of the medical records that existed prior to the date of application"); *Rowe v. Metro. Life Ins. Co.*, 2001 WL 685940, at *1 (E.D. La. June 18, 2001) ("MetLife conducted an investigation to determine applicability of coverage because Rowe's death occurred within the two year contestability period");  *Ressler v. Gen. Am. Life Ins. Co.*, 2007 WL 1091024, at *4 (E.D. Tex. April 10, 2007) (noting that undertaking an investigation

**Memorandum Decision and Order - Page 7**

during the contestability period is a customary practice in the insurance field); *Lane v. Am. Gen. Life & Accident Ins. Co.*, 2007 WL 3375070, at *3 (Tenn. Ct. App. Nov. 14, 2007).  When the insured dies within the contestability period, the insurer routinely investigates the death and the representations made in the application.  On the other hand, an insurer is not obligated to inquire into the truthfulness of assertions made in a life insurance application unless it receives information which reasonably prompts such an inquiry.  *See, e.g., Estate Funds, Inc. v. Am. Gen. Life Ins. Co. of New York*, 1990 WL 124516, at *2-3 (S.D.N.Y. Aug. 20, 1990) (when the insured died during the contestability period, the insurer conducted an investigation into his medical history and uncovered past drug abuse, the court found the insurer was under no duty to inquire into the truthfulness of  the assertions contained in the application at the time they were made).  The Court finds that America General has the right to investigate the death of Mr. Boughton to determine if he made any misrepresentations on his application since he died within the two year contestability period, which began on the date of issue, December 4, 2004.

Additionally, the Boughtons must cooperate in good faith with American General during its investigation.  Idaho law has recognized the covenant of good faith and fair dealing is implied in every contract.  *Idaho First Nat'l Bank v. Bliss Valley Foods, Inc.*, 824 P.2d 841, 863 (Idaho 1991).  This duty obligates the parties to cooperate with each other so that each may obtain the full benefit of performance.  *Id.* (quoting *Badgett v. Sec. State Bank*, 807 P.2d 356, 360 (Wash. 1991)).  The covenant of good faith and fair dealing has been applied in the context of insurance contracts, and specifically, the duty to cooperate within this implied covenant has been noted. *See Berks Mut. Leasing Corp. v. Travelers Prop. Cas. a Member of Citigroup*, 2002 WL 31761419, at *3 (E.D. Pa. Dec. 9, 2002) ("any party to a contract, whether an insurance company

or not, breaches the covenant of good faith if it...fails to cooperate in the other party's performance...").  The Eastern District of Texas has specifically found that an insured has a duty to give the insurer the necessary information and/or cooperate in its investigation.  *Ressler v. Gen. Am. Life Ins. Co.*, 2007 WL 1091024, at *4 (E.D. Tex. April 10, 2007).  In that case, the court found that, in addition to the fact that undertaking an investigation during the contestability period is customary practice, the insured's wife had a duty to give the insurer "the necessary information or to cooperate in its investigation."  *Id*.  The Boughtons have a duty to cooperate in American General's investigation based on the notions of good faith and fair dealing implied in the contract.

## <u>ORDER</u>

Based on the foregoing, the Court being otherwise fully advised in the premises, **IT IS HEREBY ORDERED that:**

1)      Defendants/Counter-Claimants Estate of Stephen Boughton, Stephen and Carolyn Boughton Trust, and Carolyn Boughton's Fed. R. Civ. P. 12(c) Motion for Judgment on the Pleadings (Docket No. 20), filed December 12, 2007, be **DENIED**; and

2)      Plaintiff/Counter-Defendant American General Life Insurance Company's Cross-Motion for Judgment on the Pleadings (Docket No. 23), filed January 14, 2008, be **GRANTED.**

DATED: June 3, 2008

Honorable Mikel H. Williams
United States Magistrate Judge